# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14CV00005 |
| v. | ) ) | **OPINION AND ORDER** |
| JUSTIN B. WITT, ET AL., | ) ) ) | By: James P. Jones<br>United States District Judge |
| Defendants. | ) | |

*Brandon Snodgrass, Snodgrass Law Firm, PLC, Abingdon, Virginia, for Justin B. Witt; Michael A. Bishop, Michael A. Bishop, P.C., Abingdon, Virginia, for J.M.W., a minor; and W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for First Sentinel Bank.*

In this interpleader action, an insurance company has paid into court the death benefit proceeds of a life insurance policy and requested the court to determine who is entitled to those proceeds — either the named beneficiaries of the policy or a bank that obtained an assignment of the policy as collateral for a loan to the insured. The bank has now moved for summary judgment in its favor, contending that there are no genuine disputes as to any material facts and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). For the following reasons, I will grant the bank's motion.

I.

The undisputed facts contained in the summary judgment record are as follows.

Douglas A. Witt was the insured under a group life insurance policy (the "Group Policy") through his employer, American Electric Power Service Corporation. The Group Policy was issued and administered by Unum Life Insurance Company of America ("Unum"). Witt, as a benefit of his employment, obtained life insurance coverage of $150,000 through the Group Policy. He left his employment in 2002, but elected to continue this coverage. On November 24, 2010, Witt executed an Assignment of Life Insurance Policy as Collateral (the "Assignment") to First Sentinel Bank (the "Bank"), as security for a loan to Witt in the amount of $358,875. The loan was also secured by real estate owned by Witt. The loan had a 12-month term, but it was not paid as scheduled and was modified twice by extending the due date, the last due date being July 24, 2013. Payment was not made on that date.

Witt died less than a month later, on August 20, 2013, of a gunshot wound. Before he died, on April 11, 2013, he had designated his two children, Justin B. Witt and J.M.W., a minor, as the beneficiaries of the Group Policy (the "Beneficiaries"). At his death, the payoff amount of the loan to the Bank was $359,375.

Following Witt's death, on September 5, 2013, James W. Dudley, an attorney for the Bank, wrote to Unum advising it that the decedent had assigned the life insurance policy to the Bank as collateral for a loan, and enclosing a copy of the Assignment. In response, Unum sent a letter dated November 22, 2013, to Justin Witt, one of the Beneficiaries, advising him that "James Dudley, at the Dudley Law Firm is claiming to be a beneficiary of the Group Life Insurance benefits for which you have also submitted a claim." (Compl. Ex. F, ECF No. 1-6.) A similar letter was sent to attorney Dudley, advising him that Justin Witt had made a claim to the proceeds of the policy.

Unum followed up by letters dated December 13, 2013, to both Dudley and Justin Witt, advising them that because Unum had not heard further from them as to "the dispute" it was "interpleading the proceeds into the court system." (Compl. Ex. H, ECF No. 1-8.) The present interpleader action was thereafter filed on February 10, 2014, naming the Bank and the Beneficiaries as defendants. Subject-matter jurisdiction of this court is based upon diversity of citizenship and amount, 28 U.S.C. § 1332(a), as well as federal question jurisdiction under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e). Unum has paid into court the death benefit proceeds of the policy in the amount of $151,982.88, and without objection has been dismissed as a party. (Order, July 17, 2014, ECF No. 22.)

In advance of trial, and following discovery, the Bank has moved for summary judgment in its favor. The motion has been briefed and orally argued, and is ripe for decision.

II.

In its Complaint, Unum did not indicate the basis of any disputed claims, other than that the Bank had requested payment based on the terms of the Assignment and that "J.M.W.'s status as a minor prevents her from disclaiming any entitlement that she may have in the Death Benefit." (Compl. ¶ 24.) Unum did not explain why or how the beneficiaries' interest in the life insurance proceeds could be arguably superior to the Assignment. It did not describe any claimed defect in the Assignment or otherwise provide the basis for any reasonable belief that the Bank's claim should not be honored. It merely stated, in a conclusory fashion, that "[u]nder the circumstances, Unum cannot determine factually or legally who is entitled to the Death Benefit." (*Id.* at ¶ 27.)

The Group Policy does not preclude assignments and indeed provides for them. The Summary of Benefits under the Group Policy, a copy of which was attached to the Complaint, states as follows:

> WHAT ARE YOUR ASSIGNABILITY RIGHTS FOR THE DEATH BENEFITS UNDER YOUR LIFE INSURANCE? (Assignability Rights)
>
> > The rights provided to you by the plan for life insurance are owned by you, unless:

> -you have previously assigned these rights to someone else (known as an "assignee"); or
> -you assign your rights under the plan(s) to an assignee.
>
> We will recognize an assignee as the owner of the rights assigned only if:
>
> -the assignment is in writing, signed by you, and acceptable to us in form; and
> -a signed or certified copy of the written assignment has been received and registered by us at our home office.

(Compl. Ex. A, at 10, ECF No. 1-1.)

The Assignment references the Group Policy in question and provides, among other things, that Witt assigned to the Bank "[t]he sole right to collect from the insurer the net proceeds of the Policy when it becomes a claim by death or maturity." (*Id.* Ex. B, at ¶ B.1, ECF No. 1-2.)

The Beneficiaries do not dispute these provisions of the Group Policy and the Assignment or that their decedent Witt duly executed the Assignment as collateral for the Bank's loan. Instead, they assert that the Assignment is ineffective because the Bank failed to "perfect" the Assignment by providing it to Unum prior to Witt's death. They also argue that there is no evidence that Unum found the Assignment "acceptable in form," or that it was "registered" by it as provided for in the assignment language of the Summary of Benefits.[1]

---

[1] In their joint brief in opposition to summary judgment, the Beneficiaries also argued that by collecting the Group Policy's death benefit under the Assignment, the

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Mere speculation by the non-moving party 'cannot create a genuine issue of material fact.'" *Tsai v. Md. Aviation,* 306 F. App'x 1, 4 (4th Cir. 2008) (unpublished) (quoting *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985)).

While the Group Policy, as a benefit of employment, ought to be construed under ERISA, "ERISA plans are contractual documents, which while regulated, are governed by established principles of contract and trust law." *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996).

It is settled that where the insured assigns the proceeds of a life insurance policy as security for a debt, the creditor's right is superior to that of the beneficiary of the policy. *Smith v. Coleman*, 35 S.E.2d 107, 111 (Va. 1945). While the Beneficiaries contend that there is no present evidence that the assignment in question in this case was properly filed, life insurance policy provisions requiring an assignment to be filed with the insurance company are solely for the benefit of the insurer, and not the beneficiary. *See Fid. Deposit Co.*

---

Bank would obtain a "windfall" because it also has the additional collateral of a mortgage on the decedent's real estate, which land was valued at more than the loan amount. (Br. in Opp'n 8-9, ECF No. 36.) However, as explained by the affidavit of a Bank officer, the land has yet to be sold in spite of two unsuccessful public auction attempts and the Bank agrees that "[o]nce the loan is paid in full with the proceeds of the life insurance policy and the sale of the real property, any additional proceeds from the collateral, less expenses incurred by [the Bank], will be paid to the named beneficiaries." (Tiller Aff. ¶ 16, Dec. 4, 2014, ECF No. 38-1.) Accordingly, there is no danger that the Bank will obtain a future windfall that would make it inequitable to grant it relief in this case.

*of Md. v. Moore*, 14 S.E.2d 307, 310 (Va. 1941). If the insurer does not insist on such provisions, the beneficiary cannot complain, *Dennis v. Aetna Life Ins. & Annuity Co.*, 873 F. Supp. 1000, 1006 (E.D. Va. 1995), and by filing an interpleader action, an insurance company waives compliance with such provisions. *Fid. Mut. Life Ins. Co. v. City Nat'l Bank of Fairmont*, 95 F. Supp. 276, 282 (N.D.W. Va. 1950).[2]

It is clear in this case that the insurance company has not rejected the method of filing of the Assignment. Unum averred in its Complaint that "[o]n November 24, 2010, the Insured executed [the Assigment]" (Compl. ¶ 13, ECF No. 1), and that Unum received a copy of the Assignment on or about September 5, 2013 (*id.* ¶ 20, ECF No. 1, Ex. E, ECF No. 1-5). It further averred that "[t]he Insured's coverage under the Group Policy served as collateral for a loan to the Insured from First Sentinel in the amount of $358,875.00." (Compl. ¶ 14, ECF No. 1.) Unum's only stated basis for filing the interpleader action was that one of the Beneficiaries is a minor.

---

[2] The Beneficiaries assert that the Assignment was not properly "perfected." Perfection is a concept of the Uniform Commercial Code ("UCC"). The Secured Transactions title of the UCC does not apply to assignments of interests in insurance policies or claims. *See* Va. Code Ann. § 8.9A-109(d)(8); *PPG Indus*., *Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58, 60 (2d Cir. 1976). It has been argued that the UCC ought to be amended to apply to such assignments, since it would then afford protection to subsequent assignees and thus encourage use of life insurance collateral assignments, as it presently does not. *See* Andrew Verstein, *Bad Policy for Good Policies*: *Article 9's Insurance Exclusion*, 17 Conn. Ins. L.J. 287, 318-19 (2011).

Case 1:14-cv-00005-JPJ-PMS   Document 43   Filed 01/06/15   Page 7 of 8   Pageid#: 336

Similarly, the Beneficiaries' argument that the life insurance company ought to have notice of an assignment prior to the insured's death is without merit. The Group Policy contains no such requirement and neither Unum nor the Beneficiaries were prejudiced by the timing of notice of the Assignment. *See Metro. Life Ins. Co. v. Fid. Nat'l Bank & Trust Co.*, 229 S.W. 399, 401 (Mo. Ct. App. 1921) (holding that timing of notice of assignment of life insurance policy shortly after death of insured was sufficient).

III.

For these reasons, it is **ORDERED** that Defendant First Sentinel Bank's Motion for Summary Judgment (ECF No. 34) is GRANTED. The trial is CANCELLED. The court will not enter final judgment at this time because it must first determine Unum's motion for attorneys' fees to be paid from the insurance proceeds.

ENTER: January 6, 2015

/s/ James P. Jones
United States District Judge